UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CRISTINO MEJIA and PABLO BONILLA *on behalf*
*of themselves and all other similarly situated,*

                              Plaintiffs,                    **REPORT AND**
                                                          **RECOMMENDATION**
                                                          CV 20-4 (DRH) (ARL)

         -against-

VILLA MICHELANGELO ITALIAN RESTAURANT
& PIZZERIA, INC. *also known as Michelangelo*
*Mattituck* and FRANCESCO DISTEFANO, *individually,*

                             Defendants.
------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

      The plaintiffs, Cristino Mejia ("Mejia") and Pablo Bonilla ("Bonilla"),[1] commenced this

putative collective action on January 4, 2020, against the defendants, Villa Michelangelo Italian

Restaurant & Pizzeria ("Michelangelo") and Francesco DiStefano ("DiStefano") (collectively,

"the defendants"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

("FLSA") and the New York Labor Law §§ 190 et seq. ("NYLL").  By Order dated April 13,

2021, District Judge Hurley referred the plaintiffs' motion for a default judgment to the

undersigned.  For the reasons set forth below, the undersigned respectfully recommends that the

motion be granted, in part, and that the plaintiffs be awarded damages in the following amounts:

(1) $145,130 in unpaid overtime wages; (2) $2,280 in unpaid wages; (3) $27,758 in spread of

hours pay; (4) $175,168 in liquidated damages; (3) $10,000 for wage notice violations and

$10,000 for wage statement violations; (4) $69,687.82 in prejudgment interest; and (5)

$10,641.02. in attorneys' fees and costs.

---

[1] Bonilla's full name is Pablo A. Bonilla Nunez.  Bonilla Aff. ¶ 1.

## BACKGROUND

### A.    Factual Averments

The defendant Michelangelo is a corporation organized under the laws of the State of New York with a primary office in Mattituck, New York.  Am. Compl. ¶ 22.  According to the amended complaint, Michelangelo is engaged in interstate commerce due to the fact that it uses food that comes from out of state to prepare its final product sold to patrons in New York.  *Id.* ¶ 31.  The plaintiffs also assert that Michelangelo's annual gross revenue has exceeded $500,000.00 in each of the years at issue.  *Id.* ¶ 8.  The individual defendant DiStefano is alleged to be an owner, partner, officer, and/or manager of Michelangelo.  *Id.* ¶ 11.  The plaintiffs also assert, upon information and belief, that DiStefano managed, owned, controlled and/or operated Michelangelo and regularly exercised the authority to hire and fire employees, determine their work schedules, and set their rates of pay.  *Id.* ¶ 12.  In addition, the plaintiffs allege, upon information and belief, that DiStefano controlled the finances of Michelangelo.  *Id.*  Finally, the plaintiffs claim that DiStefano regularly directed what jobs they were to perform and what they were going to be paid. *Id.* ¶¶ 14-5.

Mejia and Bonilla were both employed by the defendants as cooks from 2009 to September 2019.  Am. Compl. ¶¶ 18-9.  Their primary duty was to make pizza.  *Id.* ¶ 32. According to Mejia, with the exception of nine weeks between late November 2018 and early January 2019, he worked an average of 63.5 hours per week and was paid a straight hourly wage of $20.00 per hour.  Mejia Aff. ¶¶ 5-6.  Mejia avers that the defendants never paid his overtime rate, that being $30.00 per hour, for any of the hours he worked in excess of 40 hours per week. *Id.* ¶ 5.  Mejia further claims that during the nine week period referenced above, he also worked an average of 63.5 hours per week but only received pay for 38 hours per week during eight of

those nine weeks. *Id.* ¶ 8. One week, he received no pay at all. *Id.* Accordingly, Mejia claims that he is owed the following amounts:

> a. For the period from January 3, 2014 to November 4, 2018, and January 9, 2019 to September 10, 2019, $66,010.00 in unpaid overtime wages (287 weeks x 23 hrs. x $10.00).

> b. For the period from November 5, 2018 to January 8, 2019, $1,160 in unpaid wages (58 hrs. x $20.00) plus $6,210.00 in unpaid overtime wages (9 wks. x 23 hrs. x $30.00, for a total of $7,370.[2]

*Id.* ¶ 9.

Mejia also claims that he is owed spread of hours pay - one hour of minimum wage for each day he worked greater than 10 hours. *Id.* ¶ 10. To this end, Mejia alleges that at least 5 days per work week, he worked 11-12 hours per day. *Id.* He is seeking to be $14,369.00 in spread of hours pay, calculated as follows:

> a. 2014 - 51 weeks x 5 hours per week x $8.00 per hour = $2,040;

> b. 2015 – 52 weeks x 5 hours per week x $8.75 per hour = $2,275;

> c. 2016 – 52 weeks x 5 hours per week x $9.00 per hour = $2,340;

> d. 2017 – 52 weeks x 5 hours per week x $10.40 per hour = $2,704;

> e. 2018 – 52 weeks x 5 hours per week x $11.10 per hour = $2,886; and

> f. 2019 – 36 weeks x 5 hours per week x $11.80 per hour = $2,124.[3]

*Id.* Finally, Mejia seeks statutory damages based on the defendants' failure to supply him with written notice of his regular rate of pay or his overtime rate or a proper wage statement when he

---

[2] Mejia and Bonilla both rounded down the hours they worked to 63 for purposes of the calculations. Since the amount they are seeking is slightly lower given the rounded number, the Court will consider the calculations supplied by Mejia and Bonilla in their affidavits. However, the Court notes that Mejia is seeking 58 hours in unpaid wages despite the fact that he claims to be owed 2 hours x 8 weeks plus 40 hours for the ninth week or 56 hours.
[3] These calculations are based on the New York minimum wage in effect during the relevant time period. The Court notes that the plaintiffs have not used the correct minimum wage for 2017-2109. In 2017, the New York minimum wage was $9.70. In 2018, the New York minimum wage was $10.40. In 2019, the New York minimum wage was $11.10.

was hired. *Id.* ¶¶ 12-3.  He is, therefore, seeking an additional $5,000 for each of the two violations. *Id.*

Bonilla seeks similar damages.  Bonilla avers that with the exception of ten weeks between late November 2018 and early January 2019, he too worked an average of 63.5 hours per week and was paid a straight hourly wage of $20.00 per hour.  Bonilla Aff. ¶¶ 5-6.  Bonilla also alleges that the defendants never paid him overtime for any of the hours he worked in excess of 40 hours per week. *Id.* ¶ 5.  Bonilla further claims that during a ten week period between 2018 and 2019, he continued to work an average of 63.5 hours per week but only received pay for 38 hours during nine of those weeks. *Id.* ¶ 8.  One week, he received no pay at all. *Id.*  Accordingly, Bonilla claims he is owed the following amounts:

> a. For the period from January 3, 2014 to November 4, 2018, and January 9, 2019 to September 10, 2019, $66,010.00 in unpaid overtime wages (287 weeks x 23 hrs. x $10.00).
>
> b. For the period from November 5, 2018 to January 8, 2019, $1,160 in unpaid wages (58 hrs. x $20.00) plus $6,900.00 in unpaid overtime wages (10 wks. x 23 hrs. x $30.00.

*Id.* ¶ 9.

In addition, Bonilla claims that he is owed spread of hours pay - one hour of minimum wage for each day he worked greater than 10 hours. *Id.* ¶ 10.  To this end, Bonilla alleges that he also worked at least 5 days per work week, 11-12 hours per day. *Id.*  He is seeking to be $14,369.00 in spread of hours pay, calculated as follows:

> a. 2014 - 51 weeks x 5 hours per week x $8.00 per hour = $2,040;
>
> b. 2015 – 52 weeks x 5 hours per week x $8.75 per hour = $2,275;
>
> c. 2016 – 52 weeks x 5 hours per week x $9.00 per hour = $2,340;
>
> d. 2017 – 52 weeks x 5 hours per week x $10.40 per hour = $2,704;

e. 2018 – 52 weeks x 5 hours per week x $11.10 per hour = $2,886; and

f. 2019 – 36 weeks x 5 hours per week x $11.80 per hour = $2,124.

*Id.* Finally, Bonilla similarly seeks statutory damages based on the defendants' failure to supply him with written notice of his regular rate of pay or his overtime rate or a proper wage statement when he was hired. *Id.* ¶¶ 12-3. He is, therefore, seeking an additional $5,000 for each of the two violations. *Id.*

### B.    Procedural History

As stated above, the plaintiffs commenced this action by filing a complaint on January 4, 2020. Intitially, their proposed summonses were rejected by the Court. It appears that the plaintiffs had used a different name for the corporate defendant in the caption of the complaint and the proposed summons. Nonetheless, according to the plaintiffs, on January 23, 2020, they served Michelangelo and DiStefano at the restaurant with a copy of the summons and complaint. ECF No. 12, Jaffe Dec. ¶ 5, Ex. A. The process server also mailed a copy of the documents to DiStefano at the corporate address.

After serving those documents, counsel for the plaintiffs realized that the summonses she had served had not yet been issued by the Clerk of Court. ECF No. 12, Pls.' Mem. at 2. Counsel also realized that she had improperly named the corporate defendant Michelangelo Pizzeria and Restaurant of Eastport, Inc. *Id.* Accordingly, plaintiffs' counsel decided to file an amended complaint on February 26, 2020. ECF No. 5. Approximately one month later, she also filed proposed amended summonses with the Court, which were then issued for both defendants. ECF No. 7. Upon receipt of the new summonses, the plaintiffs served Michelangelo by service on its manager, Russ DiStefano. ECF No. 8. The plaintiffs then attempted service on DiStefano at 6 Wood Sorrell Lane, East Northport, New York. Plaintiffs' counsel alleges that she obtained his

address through a google search, but the service was unsuccessful.  ECF No. 12, Pls.' Mem. at 2-3.

In May, having failed to serve DiStefano, the plaintiffs requested the entry of a default for Michelangelo, who had not yet answered or otherwise appeared in the action.[4]  ECF No. 9.  That same day, the certificate of default for Michelangelo was entered.  ECF Nos. 10.  The plaintiffs did not immediately move for a default judgment nor did they attempt to serve DiStefano again until early August.  That attempt was also unsuccessful.  Then, in October, the plaintiffs sought and were granted a 60-day extension of time to serve DiStefano *nunc pro tunc*.  ECF No. 13.  According to the plaintiffs, on November 18, 2020, they finally perfected service on DiStefano by serving a person of suitable age and discretion at Michelangelo, namely, DiStefano's alleged co-worker "Joe Doe." ECF No. 14.  The process server also mailed a copy of the documents to DiStefano at the same address.  *Id.*  DiStefano failed to answer or otherwise move and, on December 17, 2020, the Clerk of the Court entered a certificate reflecting the default of DiStefano.  ECF No. 16.  Four months later, the plaintiffs filed the instant motion for a default judgment.

## DISCUSSION

### A.    Legal Standard Governing Default Judgments

Federal Rule of Civil Procedure 55 establishes a two-step process regarding default judgments.  First, the Clerk of the Court enters the party's default.  Then, as here, a motion for a default judgment is made to the district court judge.  A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see*

---

[4] The plaintiffs never sought to conditionally certify this matter.

*also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.,* No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) ("[A]ll well-pleaded factual allegations in the plaintiff's complaint pertaining to liability are deemed true"). However, even if a plaintiff's claims are deemed admitted, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law' " prior to entering default judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (alterations omitted). A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997). The movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 159.

"In the context of a motion for default judgment on FLSA and NYLL claims, 'the plaintiff's recollection and estimates of hours worked are presumed to be correct.'" *Pena v. Super Econ. One Way Supermarket Corp.*, No. 20 CV 3060 MKB PK, 2021 WL 4755603, at *3 (E.D.N.Y. Sept. 8, 2021), report and recommendation adopted sub nom. 2021 WL 4398204 (E.D.N.Y. Sept. 25, 2021) (*citing Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) ("[I]n the absence of rebuttal by defendants, or where the employer has defaulted, as here, the employee's recollection and estimates of hours worked are presumed to be correct.") (quotations, citations, and alterations omitted)).

## B.    Service

As a threshold matter, given the procedural history of this case, it warrants mention that the undersigned is now satisfied that service was proper as to DiStefano and Michelangelo. Pursuant to Federal Rule of Civil Procedure 4(e)(1), an individual may be served in accordance with the service rules of the state where the district is located or service is made.  New York Civil Practice Law and Rules ("CPLR") § 308(2) allows for personal service on an individual by delivering the summons within the state to a person of suitable age and discretion at the actual place of business of the person to be served and by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential." CPLR § 308(2).  Pursuant to the Rule, the envelope may not indicate, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served.  *Id*.  In this case, the plaintiffs' process server delivered papers to "Joe Doe" at Michelangelo.  ECF No. 14.  Joe Doe refused to give his name but was identified as a co-worker of DiStefano and appeared, to the process server, to be of suitable age (55-60 years). *Id.*  The plaintiffs' process server also verified with Joe Doe that DiStefano was not, to his knowledge, in the military service as that term is defined in relevant statutes.  *Id.*  Finally, the plaintiffs' process server mailed a copy of the summons and amended complaint in a properly sealed envelope to DiStefano at Michelangelo.  *Id.*

The Court is also satisfied that the plaintiffs have properly served Michelangelo.  Fed. R. Civ. P. 4 (h) permits a corporation, partnership or association to be served in any manner prescribed by Rule 4(e)(1) for serving an individual or by delivering a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process.  Fed. R. Civ. P. 4.  In this case, the plaintiffs

served Michelangelo by service on Russ DiStefano, the manager of the restaurant, who the process service "knew to be an authorized agent of the corporation."  ECF No. 8.

Finding that the defendants were properly served and have defaulted, the Court turns its attention to whether the facts establish the defendants' liability under the FLSA and NYLL.

### C.    Federal And State Wage Laws

The FLSA requires employers to pay their employees the statutory minimum wage as well as a premium (one and one-half times the regular rate) for hours worked above 40 hours per week. 29 U.S.C. §§ 206, 207.  The NYLL mirrors the FLSA in most but not all respects.  The NYLL also requires employers to pay at least a minimum hourly rate to employees and mandates a similar premium for overtime compensation, but the state law additionally requires that an employee be paid a "spread-of-hours" premium equal to one hour of pay at the statutory minimum wage for each day an employee works over ten hours.  NYLL § 650 et seq.; N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12 §§ 142–2.2, –2.4.

The FSLA and NYLL both provide for an additional award of liquidated damages to plaintiffs who establish that their employer has failed to pay required wages.  Specifically, an employer who violates the federal minimum wage and overtime provisions "shall be liable" to employees for unpaid minimum wages and overtime in "an additional equal amount as liquidated damages." 29 U.S.C. § 216 (b).10.  Pursuant to the NYLL, employees may also recover liquidated damages of 100% of wages owed unless "the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. L. § 198(1–a).

Finally, under the NYLL, employees must be provided a written notice of their pay when they are hired and wage statements for each payment of wages.  *See* N.Y. Lab. Law §§ 195(1), 195(3), 198(1).  Pursuant to section 198(1-b) of the NYLL, an employee who, within ten business

days of his or her first day of employment, was not provided with notice in accordance with

section 195(1) of the NYLL, is entitled to statutory damages of $50 per day during which the

violation occurred, up to a maximum of $5,000.  *See* N.Y. Lab. Law § 198(1-b).  Section 198(1-d)

of the NYLL provides that, with respect to the regular wage statements required pursuant to

section 195(3), an employee who has not been provided with such a statement is entitled to

recover statutory damages of $250 per day, up to a maximum of $5,000.  *See* N.Y. Lab. Law §

198(1-d).

      1.      **Employer Status**

In order to establish liability under the FLSA, the plaintiffs must prove either individual

liability or enterprise liability.  *See Leon v. Chen*, No. 16-CV-480, 2017 WL 1184149, at *4

(E.D.N.Y. Mar. 29, 2017).  Individual liability applies to any individual "engaged directly in

interstate commerce or in the production of goods for interstate commerce." *Coley v. Vannguard*

*Urb. Improvement Ass'n, Inc.*, No. 12 CV 5565 PKC RER, 2018 WL 1513628, at *3 (E.D.N.Y.

Mar. 27, 2018), as amended (Mar. 29, 2018) (quoting *Tony & Susan Alamo Found. v. Sec'y of*

*Labor,* 471 U.S. 290, 295 n.8 (1985)).  To determine who qualifies as an "employer" for purposes

of individual liability, the Second Circuit looks to the factors set forth in *Carter v. Dutchess Cmty.*

*Coll.*, 735 F.2d 8 (2d Cir. 1984), which are "whether the alleged employer (1) had the power to

hire and fire the employees, (2) supervised and controlled employee work schedules or conditions

of employment, (3) determined the rate and method of payment, and (4) maintained employment

records." *Coley*, 2018 WL 1513628, at *4.  In contrast, enterprise liability applies to entities that:

"(1) perform related activities "for a common business purpose"; (2) have "employees engaged in

commerce or in the production of goods for commerce, or . . . employees handling, selling, or

otherwise working on goods or materials that have been moved in or produced for commerce by

any person"; and (3) have an "annual gross volume of sales made or business done [ ] not less than $500,000." *Id* *3 (quoting 29 U.S.C. § 203(r)–(s)). The courts in this Circuit had often held that the plaintiffs' allegations are sufficient to establish both individual and enterprise liability under the FLSA.

In this case, the plaintiffs allege that Michelangelo engaged in interstate commerce due to the fact that it prepared food coming from outside of the state and that it had annual gross revenues exceeded $500,000.00. Am. Compl. ¶ 8, 31. The plaintiffs also allege DiStefano is an owner, partner, officer, or manager of Michelangelo who regularly exercised the authority to hire and fire employees, determine their work schedules, and set their rates of pay. *Id.* ¶¶ 11-2. Indeed, the plaintiffs claim that DiStefano regularly directed what jobs they were to perform and what they were going to be paid. *Id*. ¶¶ 14-5. Finally, the plaintiffs assert that DiStefano controlled the finances of Michelangelo. *Id*.

Based on the allegations in the complaint and the plaintiffs' affidavits, the undersigned finds that Michelangelo and DiStefano were the plaintiffs' employers under the FSLA. Although the plaintiffs have asked the Court to infer that the Michelangelo is engaged in interstate commerce simply by virtue of the fact that uses food originating from outside of the state, Michelangelo has forfeited any contention that the plaintiffs' are not entitled to the protection of the FLSA given its default. *See Gunawan v. Sake Sushi Rest*., 897 F. Supp. 2d 76, 86 (E.D.N.Y. 2012); *see also Huerta v. Victoria Bakery*, No. 10 CV 4754 RJD JO, 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012) ("It is inconceivable that some of the bread-making materials used by plaintiffs did not originate out of state or that the bakery did not sell its products outside the State of New York."). In addition, despite asserting several of the claims concerning DiStefano upon

11

information and belief, the plaintiffs claim that DiStefano regularly directed what jobs they were to perform and what they were going to be paid.  Am. Compl. ¶¶ 14-5.

 In addition, once liability is established under the FSLA, courts will routinely impose liability for NYLL violations.  *Rodriguez v. Ridge Pizza Inc.,* No. CV 16-254 DRH AKT, 2018 WL 1335358, at *7 (E.D.N.Y. Mar. 15, 2018) (citing *Guardado v. 13 Wall St., Inc.,* No. 15-CV-2482, 2016 WL 7480358, at *5 (E.D.N.Y. Dec. 2, 2016), adopted by, 2016 WL 7480363 (E.D.N.Y. Dec. 29, 2016)).  Moreover, the NYLL definition of "employer" differs slightly from the FLSA definition in that it "does not require that a [d]efendant achieve a certain minimum in annual sales or business in order to be subject to the law.'" *Id.* (citing *Fermin v. Las Delicias Peruanas Rest., Inc.,* 93 F. Supp. 3d 19, 34 (E.D.N.Y. 2015).  "Under the NYLL, 'an employee is simply defined as 'any individual employed or permitted to work by an employer in any occupation.'" *Id.*  As such, the Court's analysis under the NYLL "focuses more on 'the degree of control exercised by the purported employer' over the purported employee, 'as opposed to the economic reality of the situation.'" *Id*  For these reasons, the undersigned finds that the plaintiffs have also established the existence of an employment relationship within the meaning of the NYLL.

### 2.    Employee Status

To establish a claim under the FLSA, the plaintiffs must also show that they are "employees" of the defendants within the meaning of the FLSA.  *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 31–32 (E.D.N.Y. 2015).  For the purpose of this default motion, the plaintiffs qualify as employee based on their allegation that they were employed as pizza cooks from 2009 to 2019.  *See id.* (citing *Garcia v. Badyna*, No. 13 Civ. 4021 (RRM) (CLP), 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014) ("Insofar as Plaintiffs' Complaint

alleges that Defendants employed Plaintiffs within this statutory meaning, "[i]t follows . . . that for purposes of this default, [they] qualif[y] as ... 'employee[s]' under the FLSA.")).  Similarly, to recover under the NYLL, the plaintiffs must establish that they were "employees" as defined by the statute.  *Id.*  In fact, the plaintiffs' burden in establishing that they are "employees" entitled to NYLL protections is nearly identical to the burden under the FLSA.  *Id.*  In this case, there is no question that the plaintiffs quality as employees under both statutes.

   **3.      Statute of Limitations**

   Before turning to the defendants' actual liability under the statutes, the Court must address the relevant statute of limitations.  The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years.  *See* 29 U.S.C. § 255(a).  The NYLL establishes a six-year limitations period.  *See* N.Y. Lab Law §§ 198(3), 663(3).  Because the plaintiffs have asserted claims under both the FLSA and NYLL, relief is available under either statute.  *See Pineda v. Masonry Const., Inc.,* 831 F. Supp. 2d 666, 676 (S.D.N.Y. 2011).  The undersigned will, therefore, employ the NYLL for the purposes of unpaid overtime claims, unpaid wages and spread of hours claim, which covers all of the plaintiffs' claims from January 3, 2014.

   **4.      The Plaintiffs' Overtime Claims**

   As noted above, the plaintiffs assert that the defendants violated the NYLL's overtime provisions for the period of their employment between January 4, 2014 and September 10, 2019.  Specifically, both plaintiffs claim that the defendants compensated them at their regular hourly rate without any premium compensation for those hours worked in excess of his first 40 per week.  *See* Mejia Aff. ¶ 5; Bonilla Aff. ¶ 5.  Mejia seeks $66,010.00 in unpaid overtime wages for the period from January 3, 2014 to November 4, 2018 and January 9, 2019 to September 10, 2019,

and $6,210.00 in unpaid overtime wages for the period from November 5, 2018 to January 8, 2019.  Mejia Aff. ¶ 9.  Bonilla also seeks $66,010.00 in unpaid overtime wages for the period from January 3, 2014 to November 4, 2018 and January 9, 2019 to September 10, 2019, but he has requested $6,900.00 in unpaid overtime wages for the period from November 5, 2018 to January 8, 2019.  Bonilla Aff. ¶ 9.  As stated above, the NYLL regulations state that: "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate...." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.  As employers subject to the NYLL, the defendants are consequently liable for the plaintiffs' properly pled violation of the statute's overtime requirements.  Accordingly, the undersigned finds that a default judgment against the defendants for failure to pay overtime is appropriate under the NYLL.  The undersigned, therefore, recommends that the motion be granted, Mejia be awarded $72,220 and Bonilla be awarded $72,910 in overtime wages, respectively, for a total award of $145,130.[5]

**5.    The Plaintiffs' Claims for Unpaid Wages**

The plaintiffs also seek to be reimbursed for wages that they did not receive during the period from November 5, 2018 to January 8, 2019.  To this end, Mejia and Bonilla both claim that they are owed $1,160 in unpaid wages.  With respect to this claim, it is important to note that the plaintiffs are seeking "unpaid straight time" at an hourly rate well in excess of the federal or state applicable minimum wage.  The FLSA does not provide plaintiffs with a remedy for unpaid wages that exceed the statutorily mandated minimum wage.  *See Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011).  Therefore, to the extent the plaintiff are claiming damages in excess of the minimum wage, their unpaid wage claim cannot be sustained under the FLSA.

---

[5] The undersigned recommends that Counts I and II in the amended complaint, which seek the recovery of minimum wage compensation, be dismissed.  According to the plaintiffs, they were always paid in excess of the federal and state minimum wage.

However, unlike its federal counterpart, the NYLL provides that employees are entitled to recover all unpaid wages. *Id.* (citing See N.Y. Lab. Law § 198(3)). Nonetheless, as previously noted, Mejia appears to have made an error in is calculation of unpaid wages. Specifically, Mejia is seeking 58 hours in unpaid wages despite the fact that he claims to be owed 2 hours x 8 weeks plus 40 hours for the ninth week or 56 hours. Accordingly, the undersigned further recommends that Mejia be awarded $1,120 and Bonilla be award $1,160, for a total award of $2,280 in unpaid wages.

### 6.    The Plaintiffs' Spread of Hours Claims

The Court also finds that the defendants are liable for violating the spread of hours provisions of the NYLL because they never provided any additional compensation to Mejia or Bonilla for their shifts that exceeded ten hours in length. "The relevant regulation of the New York State Department of Labor . . . provides, in pertinent part, that, 'in addition to the minimum wage,' if an employee works in excess of 10 hours in a day, '[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate.'" *Chuchuca v. Creative Customs Cabinets Inc.*, 13-Civ.-2506, 2014 WL 6674583, at *10 (E.D.N.Y. Nov. 25, 2014) (quoting N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.4). The plaintiffs allege that from 2014 through 2019, the defendants never paid them any premium even though they worked more than ten hours at least 5 days per work week. Mejia Aff. *Id.* ¶ 10; Bonilla Aff. *Id.* ¶ 10. In light of the foregoing, the undersigned respectfully recommends that the defendants be found liable to the plaintiffs for spread-of-hours pay and that they be awarded $13,879 each based on the following revised calculation:

> a. 2014 - 51 weeks x 5 hours per week x $8.00 per hour = $2,040;
> b. 2015 - 52 weeks x 5 hours per week x $8.75 per hour = $2,275;
> c. 2016 - 52 weeks x 5 hours per week x $9.00 per hour = $2,340;
> d. 2017 - 52 weeks x 5 hours per week x $9.70 per hour = $2,522;

> e. 2018 - 52 weeks x 5 hours per week x $10.40 per hour = $2,704; and
> f. 2019 - 36 weeks x 5 hours per week x $11.10 per hour = $1,998.

**7.    Liquidated Damages**

Both federal and state law provide for an additional award of liquidated damages to plaintiffs who establish that their employer has failed to pay required wages.  While some court have "disagreed as to whether a plaintiff may secure cumulative awards of liquidated damaged under both statutes," the undersigned agrees with those courts that have concluded that a cumulative award should not be permitted.  *See Gunawan,* 897 F. Supp. 2d at 91 (E.D.N.Y. 2012) (citing *Greathouse v. JHS Sec., Inc.*, 2012 WL 3871523, at *7 (S.D.N.Y. Sept. 7, 2012) (collecting cases and concluding that a cumulative award is not permitted)).  In any case, the plaintiffs have only request liquidated damages under the NYLL.  Pls.' Mem. at 2.  As discussed above, under the NYLL, employees may recover liquidated damages of 100% of wages owed unless "the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. L. § 198(1–a).  Under the NYLL, "liquidated damages are presumed unless defendants can show subjective good faith." *Zubair v. EnTech Eng'g, P.C.*, 900 F. Supp. 2d 355, 360 n. 3 (S.D.N.Y. 2012).  As such, the undersigned further recommends that the Mejia be awarded $87,219 in liquidated damages and Bonilla be awarded $87,949 in liquidated damages for a total award of $175,168.

**8.    The NYLL Wage Notice Statutory Penalties**

The plaintiffs also seek damages due to the defendants' failure to provide them with written notice of their pay when they was hired and wage statements for each payment of wages under Section 195 of the NYLL. N.Y. Lab. Law §§ 195(1), 195(3).  For the defendants' initial failure to provide them with a written wage notice within ten business days of being hired, the

plaintiff are entitled to recover $50 for each workweek that the violation continued, up to a

statutory maximum of $5,000.  N.Y. Lab. Law § 198(1–b).  In this case, the plaintiffs' allege that

the violation persisted during 295 workweeks.  Accordingly, the undersigned recommends that

each of the plaintiffs be awarded the $5,000 statutory maximum.  The plaintiffs are also entitled to

recover $250 for each week that they did not receive a wage statement with their wage payment,

up to a statutory maximum of $5,500. N.Y. Lab. Law § 198(1–d).  Therefore, the Court further

recommends that the plaintiffs also be awarded $5000 for workweeks in which they received no

wage statement.

### 9.    Prejudgment Interest

The plaintiffs also seeks pre-judgment interest for their NYLL unpaid wage damages from

January 3, 2017, the midpoint of their employment dates, to January 18, 2021, when they filed a

motion for a default judgment.  Mejia Aff. ¶ 15; Bonilla Aff. ¶ 15.  "Although it is 'well settled'

that pre-judgment interest is not awardable under FLSA where liquidated damages are awarded,

'NYLL permits the award of both liquidated damages and pre-judgment interest.'" *Gil v. Frantzis*,

No. 17-CV-1520-ARR-SJB, 2018 WL 4522094, at *15 (E.D.N.Y. Aug. 17, 2018), *report and

recommendation adopted as modified,* No. 17 CV 1520 ARR SJB, 2018 WL 4299987 (E.D.N.Y.

Sept. 10, 2018) (internal citation omitted).  Here, the plaintiffs are entitled to an award of pre-

judgment interest on their NYLL damages at a rate of 9% per year.  *See id.* (citing N.Y. C.P.L.R.

§ 5004).  Indeed, as the plaintiffs suggest, "[w]here, as here, unpaid wages are 'incurred at various

times, interest shall be computed . . . from a single reasonable intermediate date.'" *Id.* (citing N.Y.

C.P.L.R. § 5001(b)).  Court have discretion in determining a reasonable date from which to award

pre-judgment interest and often use midpoint date of the NYLL claims sought in the litigation.  *Id.*

The reasonable intermediate date is this case would, therefore, be January 3, 2017.  The total

amount ($87,210 for Mejia and $87,949 for Bonilla) at 9% a year for 4.04 years results in $37,709.56 per year in interest for Mejia and $31,978.26 per year in interest for Bonilla. Thus, the undersigned recommends that prejudgment interest be awarded in the total amount of $69,687.82.

### D.    Attorneys' Fees and Costs

Finally, the plaintiffs seek $10,440 in attorney's fees and $1,101.02 in costs for a total of $11,541.02. As a general matter, in determining appropriate attorneys' fees, the "starting point" for calculating a "'presumptively reasonable fee," is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee'.") (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany,* 522 F.3d 182, 183 (2d Cir. 2008)). The Supreme Court held that "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. Ex rel. Winn.*, 559 U.S. 542, 551 (2010) (emphasis in original). "The lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee." *Id.* at 553 (citation omitted); *see Arbor Hill Concerned Citizens Neighborhood Assoc.*, 522 F.3d at 184, 190-91 (holding a court determines a "presumptively reasonable fee" by considering case specific factors in order to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplying that rate by the number of reasonable hours). This assessment is undertaken "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to

litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Assoc*., 522 F.3d at 190.  The reasonableness of hourly rates are guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984), and the relevant community is generally the "district in which the court sits," *Polk v. New York State Dep't of Corr. Servs*., 722 F.2d 23, 25 (2d Cir. 1983).  Moreover, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed," *Hugee v. Kimso Apartments, LLC,* 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012), and this Circuit requires contemporaneous billing records for each attorney, *see Scott v. City of New York*, 643 F.3d 56, 57 (2d Cir. 2011).  Finally, there is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances." *Perdue*, 559 U.S. at 552.

In this case, the plaintiffs retained the services of Jaffe Glenn Law Group, P.A.  According to the affidavit submitted by Jodi J. Jaffe ("Jaffe"), she and her partner Andrew Glenn spent 25.10 hours prosecuting the claims.  To support the request, Jaffe annexed her contemporaneous billing records.  ECF No. 17-5.  Her affidavit also describes her education and experience but fails to provide any information about Glenn's background.  It is also clear from the billing records that she is billing at a rate of $400 per hour.  Accordingly, while the Court has reviewed the records and finds the rate and the hours spent by Jaffe to be reasonable, the Court cannot recommend an award based on the time spent on this matter by Glenn.  Accordingly, the undersigned recommends that the plaintiffs be awarded $9,540 in fees.  The plaintiffs also seek costs in the amount of $1,101.02.  The undersigned finds this amount reasonable as well.  Accordingly, the

Court recommends that the plaintiffs be awarded attorneys' fees and costs in the amount of $10,641.02.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically filed on the date below. Counsel for plaintiffs shall serve a copy of this Report and Recommendation on the defendants upon receipt and shall file proof of service with the Court. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
        December 20, 2020

                                            _____/s/_____
                                            ARLENE R. LINDSAY
                                            United States Magistrate Judge